No. 13,160.

L. M. VALDETERO VS. CITIZEN'S BANK OF JENNINGS.

SYLLABUS.

1. CASHIER PERSONALLY AND BANK RESPONSIBLE.—While the cashier, it is true, does not represent his bank away from its domicil, by continuing the act undertaken while away, after his return, without objection on the part of the directors, if the latter sanction completing the act, it becomes the act of the bank.

2. ISSUING CHECK.—A check issued by the bank should not be countermanded as to its payment, without cause.

3. CONSIDERATION FOR AN ADVANCE OF MONEY.—A loan promised by a cashier, personally and as cashier, to enable one to go in search of the bank's presi-dent, who is sick in body and mind, and has disappeared, has consideration enough to hold the bank for the promise of its cashier, for which loan the latter issued a check, and, without cause shown, stopped payment without proof enough of any cause for stopping it, after the one who went in search had left, and was performing his part of the agreement.

ON APPEAL from the Twelfth Judicial District Court for the Parish of Calcasieu. *Read, J.*

*Schwing & Moore,* and *Fournet & Fournet* for the Plaintiff and Ap-pellee.

*Cline & Cline* and *Pujo & Moss* for the Defendant and Appellant.

Argued and submitted May 3, 1899.
Opinion handed down May 15, 1899.
Rehearing refused, (reasons assigned), June 29, 1899.

On the application for rehearing by WATKINS, J.

The opinion of the court was delivered by

BREAUX, J.   Plaintiff sued for damages in the sum of ten thousand dollars, claimed as having grown out of the defendants' refusal to honor a check drawn by the former on the Citizens' Bank of Jennings.

It appears that plaintiff left his home, in Jennings, and repaired to New Orleans, in search of Doctor E. M. Burke.   Plaintiff learned while he was in New Orleans that the missing Doctor Burke was in Tampa, Florida.   The doctor was a very sick man, both in body and mind.   Plaintiff was his friend and the friend of the family.   He had been in his employ for many years, and their business relations were close.

The defendant, Hoffman, also concerned about the absence of Dr. Burke, came to New Orleans, and met plaintiff.   He (Hoffman) was cashier of the Citizens' Bank of Jennings, and the missing Dr. Burke was its president.   Hoffman, particularly, was put out by the disappearance of the president, whom he charged with having taken funds to which he had no right.   After some talk over the situation, the defendant Hoffman, in the presence of Dr. Burke's wife, who was in New Orleans, and who testified in the case as a witness, induced plaintiff to go to Florida and bring back Dr. Burke.   He (Hoffman) promised Valdetero as an inducement, that he would honor the latter's check on the Citizens' Bank for the sum of three hundred dollars in favor of L. N. Brunswig & Co., merchants in New Orleans, whereupon, plaintiff drew his check in favor of Brunswig & Co., and left for Florida.   During his absence, the check was not honored, and the defendant cashier, Hoffman, failed to carry out his promise.   He returned plaintiff's check to Brunswig & Co., and directed them to draw a draft on plaintiff for three hundred dollars and forward it to him (Hoffman) at Jennings; that he would then remit for it, by New Orleans exchange.   The draft was drawn by Brunswig & Co., and forwarded to the bank.   Upon its receipt, the bank issued a check signed by the cashier on the State National Bank of New Orleans, which was mailed to Brunswig & Co., but, before it could be presented and paid, payment was stopped by Hoffman.   In explanation of his actions in thus refusing to pay the check, Hoffman wrote to Brunswig & Co., charging plaintiff with having made false representations, and

having drawn without authority on the bank at Jennings in which he had no funds.

Defendants, in answer to plaintiff's petition, pleaded the general denial, and Hoffman, in the same answer, pleaded that he did not seek to injure the defendant. That at the time that plaintiff alleged that authority was given to him to draw on the Citizens' Bank, he (plaintiff) and Mrs. Burke, the president's wife, as well as respondent, Hoffman, were in the city of New Orleans, searching for Dr. Burke, who was largely indebted to the bank, of which he was president, having, without the knowledge of the bank's cashier, or other officers, drawn from the vaults of the bank and failed to charge himself with the sum of fifteen hundred dollars, and that he (the cashier) had reason to believe that he still had the amount in his possession; and that he was in the City of New Orleans, and that he had determined to have him arrrested.

Here, at that meeting, he was informed by the plaintiff that Dr. Burke was not in New Orleans, but in Florida, and plaintiff said he was willing to go to Tampa, Florida, and bring him back, but he had no funds, whereupon, defendant Hoffman, avers that he promised to pay the traveling expenses of plaintiff in going in quest of Dr. Burke, which expenses he did not believe, at the time, would exceed one hundred dollars.

He, also, avers, that plaintiff was not authorized by him to draw on the Citizens' Bank for any sum other than the sum needful to bring back Dr. Burke; that after the check was presented to the bank at Jennings for payment, he (Hoffman) returned it, and sent a form of draft to Brunswig & Co., to be signed; it was drawn in favor of the Citizens' Bank of Jennings, on plaintiff; that this form was filled in due course of business; that he honored it by issuing a check of his bank on the State National Bank; but before it was presented to the drawee for payment at New Orleans, he learned that two hundred dollars of the amount was to be used to pay an indebtedness of Dr. Burke to L. N. Brunswig & Co., and for that reason, he, at once, dispatched to the bank and to Brunswig & Co., stopping the payment of the draft.

The ownership of a drug store also figures in this case, and gives rise to incidental issues of the case.

The question, as relates to the drug store, was, whether defendant, Hoffman, knew or did not know that the store was owned by the plaintiff.

Dr. Burke fell sick in Florida, and died a few days after.

The chief issue of fact is, whether defendant, Hoffman, promised in the name of the bank, to pay the check, as alleged by plaintiff, and whether he is, also, personally bound.

Plaintiff swore that he informed defendant, Hoffman, that he could not leave for Florida, unless his indebtedness to Brunswig & Co., of two hundred dollars, was taken care of by some one, as it would mature during his absence. He, in addition, said to him, that he would need one hundred dollars for his expenses; making the three hundred dollars, for which he requested a check, which he says defendant promised to honor. He swore positively that he informed defendant Hoffman of his indebtedness to Brunswig & Co., and it was only after he had been thoroughly informed that Hoffman promised to cash the check.

The testimony of plaintiff on this point, is corroborated by the wife of Dr. Burke, who was present, and said she heard the conversation.

This was denied by defendant.

The case was tried before a jury, and a verdict of $175.00 was found in favor of the plaintiff.

From the verdict and the judgment of the court, the defendant prosecutes this appeal.

We, in the first place, take up for decision the question relating to Hoffman's personal liability vel non.

The record discloses that he had a direct interest in the return of Dr. Burke, or, at any rate, he felt that certain interests in which he was concerned, would be subserved by his return. He was particularly anxious regarding his return to Jennings, and quite willing to expend an amount to find out where he was, and make his coming back certain. When informed by plaintiff as to his whereabouts, he was quite willing to advance to plaintiff the expenses of the trip to Tampa, to enable him to go in search of Dr. Burke.

The defendant does not deny that he promised to make the advances for the trip to Florida, but says that he had no idea that the amount needed would be more than one hundred dollars.

The verbal testimony, other than his own, and the letters, render it certain, we think, that he was to see to the cashing of a draft or check for the sum of three hundred dollars, as alleged by plaintiff.

It is evident, we think, that the defendant changed his mind after his return from New Orleans to Jennings, and for some reason, con-

cluded that the return of Dr. Burke was not consideration enough to justify him in paying the loan, of three hundred dollars, promised.

He adhered to his promise to make the advance, sufficiently after his return, to write to Bunswig & Co., and to change the names on their check, as before stated, and after their answer, to send a check— the payment of which he subsequently stopped.

The first change made as to the form of the check and the order not to pay the last check, as well as defendant's letters regarding plaintiff, and his want of authority to draw a check as he did, were enough to annoy and cause worry to any business man regarding his credit, and we are decidedly of the opinion that plaintiff had cause to complain.

The agreement between plaintiff and this defendant was complete, and the former was on his way to Florida to perform his part of the agreement. It was entirely too late to recall the promise. So far as the record discloses, the plaintiff complied with his obligation.

At the risk of loss, one who has promised to cash a check under the circumstances here, cannot escape the responsibility by shifting his position, and contending in the face of positive evidence to the contrary, that the amount was to be used for another purpose than that for which most of it had been used. A deliberate charge against one that he has drawn a negotiable instrument without authority, when it is evident that he was fully authorized, gives ground for complaint, and, in such a case, as the one before us for decision, for damages.

We have noted the fact that the suit was brought against the defendant, Hoffman, and against the Citizens' Bank *in solido*. The theory upon which the latter was made a party was, that it had acted through Hoffman, its cashier, and that his utterances and acts bound the bank.

Ordinarily, they would not. This cashier was at some distance from the bank's place of business, and the presumption is, that away from the bank as he was, he was not acting under the supervision, direction and control of the board of directors. The agreement entered into between Hoffman and plaintiff, in the city of New Orleans, of itself would not be binding on the bank, in our judgment. Cashiers, unless authorized, do not take with them from place to place the agency they have at the bank, but this cashier returned to his home in Jennings, and there resumed the functions of cashier, with all its responsibilities. He continued in some respects, at least, to do

that which he had bound himself to do, without authority perhaps, while away from the bank.

In order to meet the payment of the three hundred dollars, and to complete the advances as promised, he, as cashier, sent the bank's check, payment of which he afterward countermanded. This act was the act of the bank and no one else. The cashier is the directing agent of the bank in its actual management. He speaks for the bank, and is usually its executive officer in all things not especially entrusted to the directors. "He is the general manager, and, unless his operations are restricted by the directors, he is, for many purposes, looked upon by law and he is treated as if he was the whole body, whom he has power to bind, even by his tortious acts." Grant on Banking, 518.

It was at the bank's counter that the cashier issued the check. It is reasonable to presume that his act met with the approval of the board of directors, and that proper registry and entries went into their books with their sanction.

All this was done by the cashier, without one word of objection from the directors.

Plaintiff and others concerned had the right to suppose that they were dealing with the bank that had made the act of its cashier, while absent, its own, after his return.

It must be borne in mind that Dr. Burke was the president of the bank, and that the money advanced was to enable plaintiff to go in search of the president, who was a debtor to the bank, and in whose return the bank also, it may be, had some interest, and for whom the board of directors must have had some concern.

The loan to plaintiff, or rather, the promised loan, by cashing his check, as before stated, was not out of the usual course of business. He was the owner of a drug store in Jennings, and had done some business with the bank. True, his name, for reasons the evidence seeks to explain, did not figure in public as the owner, but it was well known to a few, that he was the real owner, and not Dr. Burke, whose name appeared as the owner. Knowledge of this fact was traced to some of the officers of the bank, who, plaintiff contends, had full knowledge of his ownership. True, this drug store had but little value, yet enough to give a limited standing to plaintiff as a merchant. It was not extraordinary, under the circumstances, if, as we think, the bank gave its approval to the cashier's acts, as alleged. No attempt, as we take it, was made to recall this approval—defendants

joined in one answer—save at the last moments before trial, the defendants filed a peremptory exception of no right of action, on the ground, "if the draft was drawn, as averred by plaintiff, then in that event exceptor avers that the said Hoffman was acting beyond the scope of his authority, and was not authorized to bind the bank."

For the purpose of its trial the averments of fact of plaintiff must be taken as true. We think that they do show that defendant was acting within the scope of his authority after his return to his place of duty, and that the evidence does not, as relates to the exception, negative the allegations of plaintiff's petition, but, on the contrary, that his acts, as cashier, conformed with the views of the board.

The jury fixed the damages at one hundred and seventy-five dollars.

They were of the vicinage, probably knew the parties, and are particularly competent to determine the amount of damages in such case.

The judgment is affirmed.

## On Application for Rehearing.

WATKINS, J. Plaintiff prays for judgment against the Citizens' Bank of Jennings and John H. Hoffman *in solido,* for the sum of $10,000; the case was tried by a jury, who rendered a verdict in favor of the plaintiff and against the defendants for $175.00.

From this judgment, both defendants prosecute an appeal.

In this court the appellee filed an answer and prayed for an increase in the allowance, to the sum of $2,000.00.

An examination of the case led this court to believe that the verdict and judgment were right, and it, accordingly, affirmed the same.

Defendants' application for rehearing consists in a typewritten brief, in which counsel purport to review the evidence; and a careful examination of same discloses nothing new or additional to the argument originally made.

The application chiefly rests upon the two following questions:

"First: Can a person who is cashier of a bank, transact business in his own name and for himself, without making the bank responsible?"

"Second: Can he do this as an individual through himself, as cashier, or through the assistant cashier, without making the bank responsible for his personal acts?"

These two questions may be answered in the negative, for the rea-

sons assigned in the case of Richardson, Receiver vs. Watson, recently decided, 51 Ann., and Seixas vs. Citizens' Bank, 38 Ann., 484, which is therein referred to.

· In our opinion, it would be a dangerous doctrine to announce that *any* transaction carried on by a cashier necessarily resulted in making the bank responsible, whether the officers and directors of the bank were aware of it or not; and it would be still more dangerous to extend the bank's responsibility to any act of an assistant cashier.

Banks are established for public convenience, and in the interest of the business community, and do business in pursuance of well known and well established rules; and no officer or employee of a bank has any right to deal with its funds, or negotiate transactions in their name, unless in pursuance of those rules, and with full knowledge of all other officers of the bank who are entitled to information.

The cause of action grows out of defendants' refusal to honor a check drawn by the plaintiff on the defendant bank—defendant, Hoffman, being the cashier of the defendant bank. It appears that one Dr. Burke was president of the bank, and had left home and gone to Florida on account of his being "a very sick man, both in body and mind."

The plaintiff was his friend and a friend of his family, and had been in his employ for many years, and their business relations were intimate. He was very anxious as to the whereabouts and condition of Dr. Burke.

This anxiety resulted in search being made for Dr. Burke. It appears from the evidence, that Hoffman induced the plaintiff to go to Florida and bring back Dr. Burke; and promised him as an inducement, that he would honor the latter's check on the defendant bank for the sum of $300.00, in favor of L. N. Brunswig & Co.

Thereupon, plaintiff drew the check and left for Florida; but during his absence the check was dishonored, and the cashier, Hoffman, failed to carry out his promise, and returned the check to Brunswig & Co., unpaid—directing them to draw a draft on plaintiff for $300.00, and forward it to him, and that he would remit the exchange.

The draft was drawn, forwarded to the bank, and a check issued by the cashier on the State National Bank of New Orleans, and same was mailed to Brunswig & Co.

Immediately afterwards, same was countermanded, and payment stopped by Hoffman.

The latter assigned to Brunswig & Co., his reason for so doing, to be, that plaintiff had made false representations to him, and had drawn on the defendant bank without authority—he having no funds at his credit.

The defense of Hoffman is, that after consenting to give plaintiff a check to aid in bearing his expense to Florida, "he learned that two hundred dollars of the amount was to be used to pay an indebtedness of Dr. Burke to L. N. Brunswig & Co.," Dr. Burke being alleged to have overdrawn his account with the bank to the extent of $1500.00.

The determinative question in the case was, whether "Hoffman promised in the name of the bank, to pay the check as alleged by plaintiff?"

We are satisfied from an examination of the record, as well as from the statement of the case, that both of the defendants had an interest in the return of Dr. Burke, the president of the bank.

It seems that Dr. Burke fell sick in Florida, and died a few days afterwards.

Our opinion holds, and our present examination of the record confirms the statement, that "the agreement between plaintiff and this defendant was complete, and the former was on his way to Florida to perform his part of the agreement."

"It was certainly too late to recall the promise"—the plaintiff having complied fully with his obligation.

Under these circumstances, we think both defendants are liable; and our opinion so holds.

In issuing the check of the bank and countermanding the payment of same, Hoffman acted for the bank, and in the interest of the bank, as well as his own.

This entire matter appertains to a transaction of the bank. The interest of the bank was to be subserved by the restitution of Dr. Burke ,who had largely overdrawn his personal account therewith; and the cashier was evidently seeking to further the interest of the bank by making the arrangement he proposed to the plaintiff, and by issuing the check in conformity therewith.

On this state of facts, plaintiff acted in undertaking the search for the restitution of Dr. Burke, and evidently at some expense; and this provision was evidently intended to place him in funds to discharge the same.

Our opinion says: "The loan to plaintiff, or rather the promised

loan by cashing his check as before stated, was not out of the usual course of business."

It further says: "It was not extraordinary, under the circumstances, if, as we think, the bank gave its approval to the cashier's acts as alleged. No attempt, as we take it, was made to recall this approval."

We have examined the opinion and evidence, and find no reason to change our view.

The case being one in damages and tried by a jury of the vicinage, and an application for rehearing made and overruled, and said judgment having been affirmed by this court by the unanimous voice of its judges, it would require a much more extreme case than that which is stated on the application for rehearing, to induce this court to render a different decree—the amount allowed being comparatively insignificant in comparison with the amount claimed, and the prominence of the parties to this litigation.

For this reason, the rehearing is refused.